RODNEY J. LEGGETT (SBN 332119)
rleggett@housingrightscenter.org
ZACHARY FREDERICK (SBN 333738)
zfrederick@housingrightscenter.org
**HOUSING RIGHTS CENTER**
3255 Wilshire Boulevard, Suite 1150
Los Angeles, CA 90010
Tel.: (213) 387-8400 x1114 / (818) 538-9054
Fax: (213) 381-8555

Attorneys for Plaintiffs
Sarah Salem and Naif Massoud

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SARAH SALEM, an individual; NAIF MASSOUD, an individual, | Case No.: |
| Plaintiffs, | **COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF** |
| vs. | |
| MICHAEL KRAUT, an individual; KM SILVERLAKE, LLC, a California Limited Liability Company; and HOWARD MANAGEMENT, a California Corporation, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

/ / /

/ / /

/ / /

/ / /

/ / /

-1-
COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

1. Plaintiffs Sarah Salem and Naif Massoud bring this action against Defendants Michael Kraut, KM Silverlake, LLC, and Howard Management for injunctive relief, compensatory and punitive damages, and attorneys' fees and costs for tenant harassment and discrimination on the basis of national origin, immigration status, and sex in violation of the federal Fair Housing Act ("FHA"), the California Fair Employment and Housing Act ("FEHA"), the Unruh Act, the California Unfair Competition Law, the Los Angeles Tenant Anti-Harassment Ordinance, and other state and local laws.

## I.   JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under the Fair Housing Act, 42 U.S.C. § 3613(a) and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because those state law claims are related to Plaintiffs' federal law claim and arise out of a common nucleus of related facts forming part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because all events giving rise to this Complaint occurred in this district.

## II.   PARTIES

### A.   Plaintiffs

4. Plaintiff Sarah Salem is a longstanding tenant at 1492 Silver Lake Blvd., Los Angeles, CA, 90026, a 4-unit building located in the Silver Lake neighborhood of Los Angeles (the "Subject Property") owned and operated by Defendants. Ms. Salem is, and at all times mentioned and relevant to this Complaint was, an individual and a resident of Los Angeles County, California.

5. Plaintiff Naif Massoud is Ms. Salem's husband. He applied to be a tenant at the Subject Property but was unlawfully denied. Mr. Massoud was at all times mentioned and relevant to this Complaint, a resident of Los Angeles County, California. Both Ms. Salem and Mr. Massoud are "persons" within the meaning of

/ / /

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

42 USC § 3602(d), Cal. Gov't Code § 12927(f) and Cal. Civ. Code § 1761(c), and "aggrieved persons" under Cal. Gov't Code § 12927(g).

**B.    Defendants**

6.    Defendant Michael Kraut is a manager/member of KM Silverlake, LLC who has decision-making authority with respect to the Subject Property including conducting inspections, communicating with tenants and prospective tenants, and approving prospective tenants for rent at all times relevant to this action. At all times relevant to this action, Defendant Kraut exercised real or apparent authority regarding the Subject Property on behalf of KM Silverlake, LLC. Defendant Michael Kraut is a licensed attorney in California.

7.    Defendant KM Silverlake, LLC owns the Subject Property. At all times relevant to this action, KM Silverlake, LLC had control of, and decision-making authority with respect to, the Subject Property.

8.    Defendant Howard Management manages and operates the Subject Property on behalf of KM Silverlake, LLC. At all times relevant to this action, Howard Management had control of, and decision-making authority with respect to, the Subject Property including communicating with tenants and prospective tenants, and processing and approving prospective tenants to rent. As the property manager, Howard Management is responsible for the day-to-day management of the Subject Property.

9.    1492 Silver Lake Blvd., Los Angeles, CA, 90026 is subject to the Los Angeles Rent Stabilization Ordinance ("LARSO"). The Subject Property is a "dwelling" within the meaning of 42 USC § 3602(b) and a "housing accommodation" within the meaning of FEHA and Cal. Gov't Code § 12927(d).

10.    Plaintiffs are informed and believe, and thereon alleges that, at all times mentioned herein, each and every Defendant was the agent, servant, employee, co-conspirator, and/or representative of each and every other Defendant and was, in doing the things complained of herein, acting within the scope of said agency,

service, employment, conspiracy, and/or representation, and that each and every Defendant was acting within his/her actual or apparent authority with the full knowledge and consent of each other Defendant.

### III.   FACTUAL ALLEGATIONS

11.   Plaintiff Sarah Salem lives at the Subject Property in a two-bedroom apartment. Her current rent is $2,411.96 per month. Ms. Salem is employed, and her gross monthly income is greater than three times the monthly rental amount.

12.   The Subject Property is subject to LARSO. LARSO limits the ability of a landlord to raise the annual rent for current tenants above a certain percentage. However, if the tenant moves out of the unit, the landlord may increase the rent to market rate for the next tenant. This means that the longer a tenant lives in their LARSO unit, the more money a landlord will make if the tenant moves out and the unit is placed back on the market.

13.   Ms. Salem has been a tenant at the subject property for 17 years.

14.   In 17 years as a tenant at the Subject Property, she has never missed a rental payment or been late on a rental payment.

15.   Ms. Salem moved into the two-bedroom apartment in 2007 to be roommates with her sister Nora Salem. The previous landlord approved Ms. Salem's move into the unit. In July 2013, the property was sold to a company controlled by Defendant Michael Kraut; the property was subsequently transferred to Defendant KM Silverlake, LLC.

16.   Since taking over the Subject Property, Defendant Kraut has engaged in a pattern and practice of pressuring Ms. Salem and other tenants to agree to unlawful rent increases. Throughout this time, Defendant Kraut has used a consistent tactic of threatening eviction for immaterial, minor, or pretextual issues to force them to agree to the rent increases.

///

///

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

**A.    Defendant Kraut Used Harassment and Threats to Coerce Sarah Salem and Her Sister to Agree to an Illegal Rent Increase.**

17.    Immediately after taking control of the building, Defendant Kraut pressured Ms. Salem and her sister to sign a new lease with a higher rent price that exceeded lawful rent increase amounts under LARSO. As a part of this pressure campaign, Defendant Kraut threatened to evict Plaintiff and her sister for having cats in the unit unless they signed a new lease at a higher rental amount. Despite being aware that the two cats had lived in the unit for years with the knowledge and approval of the previous landlord, Defendant Kraut gave them only two days to review the new lease, issued them a three-day notice, and ominously warned Nora Salem—who was then enrolled in law school—that an eviction would harm her admittance into the California State Bar.

18.    Defendant Kraut's intimidation and pressure worked. Worried about Defendant Kraut's threat to Nora Salem's future Bar membership and the costs of defending against eviction, Ms. Salem and her sister capitulated to Defendant Kraut's unlawful demands. They signed a new lease at the higher rental amount. The new lease began in November 2013.

19.    In the fall of 2015, Nora Salem gave Defendants a 30-Day Notice that she would be moving out of the apartment. In response, Defendant Kraut refused to remove Nora Salem from the lease and again pressured Plaintiff Salem to sign a new lease. Plaintiff Salem refused to sign a new lease and Nora Salem moved out in October 2013.

20.    Although Nora Salem moved out of the unit at the Subject Property, Ms. Salem decided to stay because the apartment is rent-controlled and in a desirable location.

**B.    Plaintiffs Sarah Salem and Naif Massoud Marry and Have a Child.**

21.    In 2023, Ms. Salem married Naif Massoud. Mr. Massoud is a German citizen. He has a green card and a work permit that gives him the right to work in

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

the United States. At all times relevant to this Complaint, Mr. Massoud was seeking work in the United States and the family primarily relied on Ms. Salem's salary for income.

22. Near the end of 2024, Ms. Salem gave birth to her and Mr. Massoud's first child.

**C.    Defendant Kraut Performs a Pretextual and Unlawful Inspection of Plaintiff Salem's Apartment.**

23. On or around January 20, 2025—two weeks after the Palisades and Eaton fires began—Defendant Kraut knocked on Ms. Salem's door without notice and told her that he needed to inspect her apartment for water leaks, cracks, and peeling paint. This was a surprise to Ms. Salem, because she had not reported any leaks and hadn't heard of any leaks from her neighbors.

24. Even though she was not provided any notice by Defendant Kraut or Defendant Howard Management, Ms. Salem agreed to let Defendant Kraut enter based on his claim that there was a water leak. During the inspection, Ms. Salem chatted with Defendant Kraut about her newborn child.

25. Ms. Salem directed Defendant Kraut to areas of the apartment where a leak could potentially form such as around plumbing, sinks, and showers. However, Defendant Kraut instead began suspiciously looking into every area of the apartment including in her newborn child's bedroom and Ms. Salem's bedroom.

26. Mr. Massoud was sleeping during this "inspection," but awoke when he heard Defendant Kraut talking in the apartment. He watched the bedroom door open, Defendant Kraut look into the room, and Defendant Kraut quickly close the door after seeing Mr. Massoud. Notably, Ms. Salem's room was very dark because she uses blackout curtains to help with sleep; however, while Defendant Kraut claimed to be looking for leaks, he didn't turn on the bedroom light or otherwise examine the walls, floors, or ceiling of the room.

/ / /

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

27. Defendant Kraut ended the "inspection" shortly after seeing Mr. Massoud.

28. Since the "inspection," Ms. Salem has not found any leaks or cracks in her unit, Defendants have not sent any plumbers or repair persons to fix any leaks or cracks, and Ms. Salem's neighbors confirmed to her that they have not had any such leaks. The actual reason Defendant Kraut undertook this pretextual "inspection" was to confirm that Mr. Massoud was at the property.

29. Upon information and belief, Defendant Kraut secretly recorded this "inspection" of Ms. Salem's home without her consent or knowledge.

**D.    Defendants Begin Discriminating Against Ms. Salem and Mr. Massoud.**

30. Two days after the "inspection," Ms. Salem received an emailed letter from Attorney Richard Jacobs. The letter, dated January 21 but sent to Ms. Salem on January 22, stated that Ms. Salem was in breach of her lease agreement by having an unauthorized occupant residing in her unit. The letter stated that Mr. Massoud would need to complete a rental application for approval to be a tenant or else Ms. Salem would face eviction.

31. The very next day, Ms. Salem emailed Defendants asking for an application for her husband. She did not receive a response to this email nor any application for Mr. Massoud.

32. Around midnight on Saturday, February 1, 2025, Defendants cancelled Ms. Salem's February rent payment and turned off Ms. Salem's ability to make rent payments online. Ms. Salem tried calling Defendant Howard Management's offices, but they were closed on the weekend. Because her lease does not have a grace period for late rental payments and charges $150 for late payments, Ms. Salem rushed to buy a cashier's check and physically dropped off her rental payment at Defendant Howard Management's offices that same day.

33. Ms. Salem emailed Defendants several times that day about her inability to pay, but did not receive a response until Tuesday, February 4—three days

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

later—confirming that they had received the payment. In these emails, Ms. Salem asked Defendants, for a second time, to send her an application for Mr. Massoud but did not receive a response or any application.

34. On Wednesday, February 5, Defendants restored her ability to make payments online. The next day Ms. Salem asked Defendant Howard Management why her February payment was cancelled and why they turned off her ability to make payments online. In this email, she again asked Defendants—for a third time—to send her an application for Mr. Massoud.

35. On February 7, Daniel Sloan, President of Howard Management and a licensed real estate broker, responded to Ms. Salem informing her that they cancelled the February rent payment and terminated her ability to pay her rent online "because the additional occupant issue was under investigation." In this email, Daniel Sloan also acknowledged that they had not sent an application for Mr. Massoud, promising that they would send the application "soon" and stating, "someone from the leasing team will be in touch."

36. This experience greatly worried Plaintiffs, as Defendants' actions confirmed that they were willing to act unlawfully in their interactions with Ms. Salem and Mr. Massoud. Accordingly, they submitted complaints to the Los Angeles Housing Authority ("LAHD") about Defendants' actions.

37. On February 19, 2025—after nearly a month of asking—Ms. Salem finally received a link for Mr. Massoud to complete the application from Lowelon Nara, Vice President and Integrator at Howard Management and a licensed real estate agent. However, the very next day, Defendant Howard Management informed her that they had only 24 hours to complete the application and "failure to do so will result in legal action . . .." Even though Plaintiffs were forced to complete the application in such a short period of time, they successfully submitted it by Defendants' deadline.

/ / /

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

38.    The application contained very little information explaining the criteria Defendants would apply in considering Mr. Massoud's application. For example, it did not identify any required credit score, any particular credit history, nor any particular employment history.

39.    Among the few requirements identified in the application were that applicants must provide a photo ID and have a "combined gross income" of three times the monthly rent. The application indicated that a "government issued photo id card" such as a "passport" would be an acceptable form of identification; notably, the application did not differentiate between a United States passport or a foreign passport. Accordingly, Mr. Massoud provided his German passport as a form of identification. Per the application instructions that he could submit "combined gross income," Mr. Massoud also provided Ms. Salem's pay stubs to verify that their combined income was more than three times the monthly rent.

40.    A few days later, Ms. Salem spoke with Defendant Kraut on the phone. During this conversation, Defendant Kraut told Ms. Salem that he did not want to approve Mr. Massoud to be a tenant because he was not a United States citizen and "could skip out and go back to Germany" leaving him unable to collect or pursue damages against him if needed.

41.    Per his practice, Defendant Kraut used this as an opportunity to pressure Ms. Salem to agree to an unlawful rent increase. Defendant Kraut told Ms. Salem that he would approve Mr. Massoud only if Ms. Salem agreed to rent increase of over $500 to $3,100 per month—over a 20% increase in rent. Defendant Kraut stated that Ms. Salem must decide by the following day.

42.    Ms. Salem asked Defendant Kraut to send her this offer in a confirming email, but he refused. Ms. Salem subsequently refused this illegal rent increase.

**E.    Defendants' Begin Campaign of Harassment and Family Separation.**

43.    After Ms. Salem rejected Defendant Kraut's dramatic and unlawful rent increase, Defendants changed tactics. Instead of attempting to further pressure Ms.

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

Salem into a rent increase, they attempted to coerce her to vacate her rent-controlled apartment so that they could place it back on the market at a higher rental price. To effectuate this strategy, Defendants retaliated against Ms. Salem and Mr. Massoud by engaging in a deliberate campaign of harassment and family separation designed to coerce her to leave.

44. Despite meeting all of the criteria for approval that Defendants identified in the application, Defendants rejected Mr. Massoud's application. On March 3, 2025, Ms. Salem received a letter signed by Defendant Howard Management Operations Manager Janely Leal informing her that after speaking with Defendant Kraut, Mr. Massoud "does not qualify to be a tenant." The letter further stated that she was in breach of her lease agreement and that Mr. Massoud only had one day to vacate the unit or they would start eviction proceedings and "a separate civil action."

45. Ms. Salem and Mr. Massoud were shocked and devastated when they received this letter. They had navigated a bizarre and unfair application process— asking for an application for nearly a month without a response from Defendants, completing the application on an arbitrary and rushed deadline, and rejecting pressure to agree to an unlawful rent increase—only to be denied based on Mr. Massoud's citizenship and immigration status. They immediately became concerned with securing housing for Mr. Massoud on such a short deadline, and worried about how they could manage to raise a newborn child with one it its primary caregivers being forced out of the house.

46. On March 5, 2025, LAHD sent two letters to Defendants informing them that tenant harassment was unlawful under state and local law, that Ms. Salem could add another adult tenant without a rent increase under LARSO, and that Defendants could not unreasonably withhold approval of Mr. Massoud.

47. Plaintiffs decided to fight against the unlawful discrimination they were experiencing. Plaintiffs retained the services of Attorney Michael Zar. On March 7,

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

2025, Attorney Zar spoke with Defendant Kraut by phone to ask him to approve Mr. Massoud as a tenant. During this conversation, Defendant Kraut repeated his discriminatory statements that he did not want to approve Mr. Massoud as a tenant because he was not a United States citizen and "could skip out and go back to Germany," leaving him unable to collect or pursue potential damages against him.

48.   Defendant Kraut then raised arbitrary, novel concerns with Mr. Massoud's application for the first time, including that Mr. Massoud "provided an ID that I cannot confirm as real," "has no employment and no income," and inadequate credit history in the United States. These new concerns directly contradicted the instructions in the application which stated that he could submit a "government issued photo id card" such as "passport" and could use "combined gross income" to meet the rental income standard

49.   To address Defendants' arbitrary and novel concerns, Attorney Zar offered to provide four alternate forms of identification for Mr. Massoud including his United States Green Card, his California Driver's License, his Social Security Card, and his German Passport. He also offered a bank statement showing Mr. Massoud had over $20,000 in his account and Mr. Massoud's German credit report which categorized Mr. Massoud in the best credit category and scored him in the highest designation across all credit check categories.

50.   Not only did Defendant Kraut refuse to accept these documents, but he refused to even look at them. Instead, he later cruelly told Plaintiffs that they "should have provided factually accurate and a complete rental application" when Mr. Massoud first applied—even though they had.

51.   On March 14th, 2025, Defendant Kraut emailed Mr. Massoud a "Notice of Trespass." The notice identified KM Silverlake, LLC as the property owner and Howard Management as the "[a]gent giving notice." In the email, Defendant Kraut stated that Howard Management had filed the notice with the Los Angeles Police Department ("LAPD") and that if Mr. Massoud returned to the Subject Property he

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

would be arrested. However, this notice, which Defendant Kraut indicated was from the LAPD, was actually from the Roseville California Police Department in northern California. Alarmingly, the logo of the Roseville Police was obscured in an attempt to conceal the fact that it is not from a local law enforcement agency.

52.    Around that same time, Defendants posted the "Notice of Trespass" and a separate Three-Day Notice to Perform or Quit signed by Janely Leal and served by Daniel Sloan to Ms. Salem's door. The Three-Day Notice—posted on March 14 but dated March 13—demanded that Ms. Salem permanently remove Mr. Massoud from the premises or face eviction.

53.    Plaintiffs were devastated when they received these notices. Defendants were not content to simply deny Mr. Massoud's application for tenancy. These notices—and the Notice of Trespass in particular—eliminated any chance for Mr. Massoud to visit his wife and infant child at the Subject Property. Mr. Massoud, who had caused no problems at the Subject Property, had no issues with any other tenants at the Subject Property, and caused no damage at the Subject Property, was being punished for Ms. Salem's rejection of the unlawful rent increase in the cruelest possible way—separating him from his wife and infant child.

54.    On March 18, March 19, and March 20, 2025, Mr. Massoud emailed Defendant Kraut and several employees at Defendant Howard Management including Daniel Sloan, Lowelon Nara, and Janely Leal, explaining that their actions were causing "extreme" and "tremendous" harm to him, Ms. Salem, and their infant child. In these emails, he repeatedly begged them to provide him with another rental application. After ignoring his pleas for several days, Defendant Kraut responded that Mr. Massoud's emails were "harassing" and "[w]e are done considering you as a tenant. Howard Management will not respond to your emails."

55.    On April 10, Plaintiffs' counsel sent a letter to Defendants informing them that the Notice of Trespass was a violation of Ms. Salem's lease, the Los

///

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

56. Angeles Tenant Anti-Harassment Act, and several federal, state, and local anti-discrimination laws.

57. On April 14—one month after issuing the Notice of Trespass—Defendant Michael Kraut stated that he would rescind the notice which was preventing Mr. Massoud from entering the premises to visit his wife and infant child. However, less than two hours later, Defendant Howard Management emailed Ms. Salem a "new Guest Policy." This new, unilateral change to Ms. Salem's lease targeted Plaintiffs by requiring her to receive permission from Defendants for a guest to stay at the property for more than five days in a month even though Ms. Salem's lease contains no restrictions on her ability to have guests. In an attempt to conceal that this was a retaliatory act, Defendant Howard Management stated that new Guest Policy was "back dated" to April 9, 2025—one day before Defendants received Plaintiffs' counsel's April 10 letter.

58. On July 3, 2025, Plaintiffs' counsel sent a letter to Defendant Howard Management requesting that Defendants rescind the unlawful Guest Policy or verify that Defendants would not take any adverse action against Ms. Salem, including unlawful detainer proceedings, if she does not adhere to the unlawful policy. The letter requested a response by July 10, 2025.

59. On July 13, 2025, Defendant Kraut emailed a response from his Kraut Law Group email account which only stated: "Howard Management will not be responding to your [July 3, 2025] email."

60. To date, Defendants campaign of harassment, discrimination, and family separation has been successful. Mr. Massoud has been forced to relocate to Orange County, California. He struggles to see his infant son. He has missed important developmental milestones, opportunities to bond with his young child, and opportunities to support his wife. He is being deprived of the opportunity to teach and raise his son to speak Arabic, his native language, and to pass along his cultural heritage and traditions.

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

61.    Because Mr. Massoud cannot fully assist as a primary caregiver, Ms. Salem has been forced to operate as a single mother which is causing negative impacts on her ability to work and rest. Ms. Salem is being deprived of the opportunity to spend time with her husband. Both Plaintiffs are being deprived of the opportunity to raise their family together, under one roof, in a single household.

**F.    Defendants Will Aggregate Income for Married Couples if the Husband is Employed and the Wife has no Income.**

62.    In June, a Housing Rights Center ("HRC") employee posing as a prospective tenant emailed Defendant Howard Management at rentals@howardmanagement.com inquiring about a two-bedroom vacancy at another property managed by Defendant Howard Management and owned by KM Cadet, LLC, another business entity controlled by Defendant Kraut.

63.    In the email, the HRC employee—using a stereotypically feminine name—stated she didn't have income because she was in school but "my husband's annual salary is around $150,000" and "[w]e can definitely provide proof of his income with the application."

64.    Shortly thereafter, an employee of Defendant Howard Management responded and confirmed that Defendants' normal business practice allows prospective tenants to combine income, stating, "[y]ou may submit joint bank statements for proof of income."

## IV.    INJURIES

65.    As a proximate result of Defendants' discriminatory conduct, Plaintiffs suffered injury. Plaintiffs suffered emotional distress, including sleeplessness, depression, exhaustion, loss of appetite, stress, anxiety, humiliation, frustration and insult, out-of-pocket costs including increased travel, childcare, and moving costs, losses, and violations of their civil rights. Accordingly, each Plaintiff is entitled to compensatory damages.

///

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

66. The unlawful and discriminatory acts and practices alleged in this Complaint were intentionally, knowingly, and maliciously committed by Defendants, including the reckless disregard for Plaintiffs rights under federal, state and local laws. Accordingly, Plaintiffs seek punitive damages.

67. There now exists an actual controversy between the parties regarding duties under federal and state laws. Accordingly, each Plaintiff is entitled to declaratory relief under their federal and state law claims including, but not limited to, 28 U.S.C. § 2201 as well as Rule 57 of the Federal Rules of Civil Procedure.

68. Unless enjoined, Defendants will continue to engage in the unlawful acts and the practice of discrimination described in this Complaint. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' misconduct unless this Court provides relief. Accordingly, Plaintiffs are entitled to injunctive relief under their federal and state law claims including, but not limited to, 28 U.S.C. § 2202 as well as Rule 65 of the Federal Rules of Civil Procedure.

## V. CAUSES OF ACTION

### A. First Claim: Federal Fair Housing Act

### All Plaintiffs v. All Defendants

69. Plaintiffs herein reallege and incorporate by reference all the preceding paragraphs of this Complaint.

70. 1492 Silver Lake Blvd., Los Angeles, CA, 90026 is a "dwelling" under the Fair Housing Act, 42 U.S.C. § 3602(b).

71. Each Defendant injured each Plaintiff in violation of the federal Fair Housing Act by committing discriminatory housing practices including, but not limited to:

    a. Refusing to negotiate for the rental of, or otherwise making unavailable or denying, a dwelling, to any person because of national origin or sex in violation of 42 U.S.C. § 3604(a),

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

including:

    i.    failing to accept or consider a bona fide offer because of national origin or sex, 24 C.F.R. § 100.60(b)(1);

    ii.   refusing to rent a dwelling or negotiate for the rental of a dwelling because of national origin or sex, 24 C.F.R. § 100.60(b)(2);

    iii.  using different qualification criteria or applications, or rental standards or procedures, such as income standards, application requirements, credit analysis or rental approval procedures or other requirements because of national origin or sex, 24 C.F.R. § 100.60(b)(4);

    iv.  conditioning the availability of a dwelling, including the price, qualification criteria, or standards or procedures for securing the dwelling, on a person's response to harassment because of national origin or sex, 24 C.F.R. § 100.60(b)(6);

b.   Discriminating in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of national origin or sex in violation of 42 U.S.C. § 3604(b);

c.   Making, printing or publishing or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on national origin or sex or an intention to make any such preference, limitation, or discrimination in violation of 42 U.S.C. § 3604(c);

d.   Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his

having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by federal Fair Housing Act in violation of 42 U.S.C. § 3617;

72. Each Plaintiff will prove that each Defendant is liable, 24 C.F.R. § 100.7, for one or more of the discriminatory housing practices listed above under a disparate treatment theory, adducing direct and circumstantial evidence of each Defendants' discriminatory intent or purpose. Plaintiffs will also prove that each Defendant is responsible for the commission of the discriminatory housing practices pursuant to the ordinary reader or listener standard, and a retaliation standard.

73. Each Plaintiff was injured or threatened with injury by Defendants' discriminatory housing practices; accordingly, each Plaintiff is an "aggrieved person," 42 U.S.C. § 3602(i), entitled to relief under the Fair Housing Act, 42 U.S.C. § 3613(a), including compensatory and punitive damages and declaratory and injunctive relief, 42. U.S.C. § 3613(c).

**B.  Second Claim: California Fair Employment and Housing Act**
**All Plaintiffs v. All Defendants**

74. Plaintiffs herein reallege and incorporate by reference all the preceding paragraphs of this Complaint.

75. 1492 Silver Lake Blvd., Los Angeles, CA, 90026 is a "housing accommodation" within the meaning of the California Fair Employment and Housing Act and Cal. Gov't Code § 12927(d).

76. Defendants, and each of them, injured each Plaintiff in violation of the Fair Employment and Housing Act by committing each of the discriminatory housing practices alleged in violation of the federal Fair Housing Act, incorporated herein by reference, Cal. Govt. Code § 12955.6, and, in addition, the following:

a. Defendants injured Plaintiff in violation of the California Fair Employment and Housing Act by discriminating against or

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

harassing Plaintiffs and otherwise making housing unavailable based on sex, gender, gender identity, and national origin, in violation of Government Code §§ 12955(a) and Government Code § 12927(c)(1).

b. Defendants injured Plaintiff in violation of the California Fair Employment and Housing Act by making or to causing to be made any written or oral inquiry concerning the national origin of any person seeking to purchase, rent, or lease any housing accommodation in violation of Government Code § 12955(b).

c. Defendants injured Plaintiff in violation of the California Fair Employment and Housing Act by making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a housing accommodation that indicates any preference, limitation, or discrimination in violation of Government Code § 12955(c).

d. Defendants injured Plaintiffs in violation of the California Fair Employment and Housing Act by being a person subject to the provisions of Section 51 of the Civil Code, as that section applies to housing accommodations, and discriminating against Plaintiffs on the basis of sex, gender, gender identity, national origin in violation of Government Code § 12955(d).

e. Defendants injured Plaintiffs in violation of the California Fair Employment and Housing Act by harassing or otherwise discriminating against Plaintiffs in the rental of housing accommodations where the owner's dominant purpose is retaliation against a person who has opposed practices unlawful

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

Defendants injured Plaintiffs in violation of the California Fair Employment and Housing Act by aiding, abetting, inciting, compelling, or coercing the doing of any of the acts or practices declared unlawful under Cal. Govt. Code § 12955, or attempting to do so in violation of Cal. Govt. Code § 12955(g).

f. Defendants injured Plaintiffs in violation of the California Fair Employment and Housing Act by otherwise making unavailable or denying a dwelling based on discrimination because of sex, gender, gender identity, and national origin in violation of Cal. Govt. Code § 12955(k);

g. Defendants injured Plaintiffs in violation of the California Fair Employment and Housing Act by providing inferior terms, conditions, privileges, facilities, or services in connection with housing accommodations based on sex, gender, gender identity, and national origin, in violation of Government Code § 12955(a), (d) and Government Code § 12927(c)(1).

77. Plaintiffs will prove that each defendant is liable, 2 C.C.R. § 12010, for the commission of these discriminatory housing practices under a disparate treatment theory, Cal. Govt. Code § 12955.8. Plaintiffs will also prove that each Defendant is responsible for the commission of the discriminatory housing practices in violation of Cal. Govt. Code § 12955(c) pursuant to the ordinary reader or listener standard, 2 C.C.R. § 12010.

78. Defendants' discriminatory conduct has caused Plaintiffs to suffer special and general damages according to proof, including but not limited to, emotional distress and attendant physical symptoms, and out-of-pocket losses for moving costs.

79. Defendants engaged in the conduct described above with malice, oppression, or fraud and did so with willful and knowing disregard of the rights and

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

safety of Plaintiffs. Defendants were aware of the probable dangerous consequences of their conduct and deliberately failed to avoid those consequences or are vicariously liable pursuant to Civil Code § 3294, subd. (b). Accordingly, Plaintiffs seek punitive and exemplary damages.

80. Defendants' conduct described above demonstrates that they will continue to engage in a pattern or practice of unlawful housing discrimination that is the subject of this Complaint. Plaintiffs lack any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss until this Court enjoins the complained of unlawful conduct and grants other affirmative relief as requested herein.

81. There now exists an actual controversy between the parties regarding Plaintiffs' rights and Defendants' duties under the fair housing laws. Accordingly, Plaintiffs seek a declaration that Defendants have violated the Fair Employment and Housing Act.

### C. Third Claim: Unruh Act
### All Plaintiffs v. All Defendants

82. Plaintiffs realleges and incorporates by reference all the preceding paragraphs of this Complaint.

83. Defendants injured Plaintiffs in violation of the Unruh Act (California Civil Code § 51 *et seq*) by discriminating against Plaintiffs based on immigration status, national origin, and sex/gender at the business establishment located at 1492 Silver Lake Blvd., Los Angeles, CA, 90026.

84. Defendants' discriminatory conduct has caused Plaintiffs to suffer special and general damages according to proof, including but not limited to, emotional distress and attendant physical symptoms, and out-of-pocket losses for moving costs.

/ / /

/ / /

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

85. Pursuant to the Unruh Act, Plaintiffs are entitled to statutory damages of up to three times their actual damages as determined by the trier of fact, but no less than $4,000 for each violation.

86. Defendants' conduct described above demonstrates that they will continue to engage in a pattern or practice of unlawful housing discrimination that is the subject of this Complaint. Plaintiffs lack any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss until this Court enjoins the

87. complained of unlawful conduct and grants other affirmative relief as requested herein.

88. There now exists an actual controversy between the parties regarding Plaintiffs' rights and Defendants' duties under the fair housing laws. Accordingly, Plaintiffs seek a declaration that Defendants have violated the Unruh Act.

### D. Fourth Claim: California Unfair Competition Law
### All Plaintiffs v. All Defendants

89. Plaintiffs herein realleges and incorporates by reference all the preceding paragraphs of this Complaint.

90. Under and pursuant to Business & Professions Code § 17200, the rental of an apartment building constitutes a "business act or practice." Plaintiffs are informed and believe and thereon allege that Defendants have engaged in the illegal and unfair business practice by discriminating based on immigration status, national origin, and sex/gender in housing.

91. Defendants injured Plaintiffs in violation of the Unfair Competition Law by applying different terms, conditions, restrictions, or privileges, based upon a person's immigration status, national origin, and sex/gender, in connection with the rental of a housing accommodation.

92. Defendants injured Plaintiffs in violation of the Unfair Competition Law by making, printing, or publishing or causing to be made, printed, or published through any medium, any notice, statement or advertisement, with regard to any

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

housing accommodation offered for rent that indicates any preference, limitation, or discrimination based upon a person's immigration status, national origin, and sex/gender.

93.    Plaintiffs seek restitution including, but not limited to, application fees. Restitution is authorized by Business and Professions Code § 17200.

94.    Unless Defendants are enjoined from further similar misconduct, current and future tenants at residential properties owned and operated by Defendants are likely to suffer irreparable injury in the loss of their legal rights. Injunctive relief is expressly authorized by Business and Professions Code § 17200.

### E.    Los Angeles Tenant Anti-Harassment Ordinance
### All Plaintiffs v. All Defendants

95.    Plaintiffs herein reallege and incorporate by reference all the preceding paragraphs of this Complaint.

96.    Defendants, and each of them, injured Plaintiffs in violation of L.A.M.C. Chap. IV, Art. 5.3, by committing unlawful practices including, but not limited to:

a.    Reducing or eliminating housing services required by a lease, contract or law;

b.    Misrepresenting the reasons for entering a rental unit;

c.    Abuse of the right of access into a rental unit as established and limited by Cal. Civ. Code § 1954;

d.    Entering or photographing portions of a rental unit that are beyond the scope of lawful entry or inspection;

e.    Inquiring into the citizenship status or a prospective additional tenant or requiring a prospective additional tenant to make any statement, representation, or certification concerning their immigration or citizenship status;

f.    Misrepresenting to a tenant that the tenant is required to vacate a

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

rental unit or enticing a tenant to vacate a rental unit through an intentional misrepresentation or the concealment or omission of a material fact;

g.  Threatening or taking action to terminate any tenancy including service of any notice to quit or other eviction notice or bringing action to recover possession of a rental unit based on facts which the landlord has no reasonable cause to believe to be true;

h.  Refusing to acknowledge or accept receipt of lawful rent payments as set forth in the lease agreement or as established by the usual practice of the parties or applicable law;

i.  Engaging in an activity prohibited by federal, state, or local housing anti-discrimination laws;

j.  Other repeated acts or omissions that substantially interfere with or disturb the comfort, peace, and quiet of a tenant;

k.  Unilaterally imposing or requiring an existing tenant to agree to new material terms of a tenancy;

l.  Interfering with a tenant's right to privacy.

97.  Accordingly, Plaintiffs are entitled to relief according to proof pursuant to L.A.M.C. § 45.35, including three times compensatory damages (including damages for mental or emotional distress), rent refunds for reduction in housing services, reasonable attorney's fees and costs, civil penalties up to $10,000 but not less than $2,000 per violation depending upon the severity of the violation, and other appropriate relief for each violation.

98.  Unless the Defendants are enjoined from further similar misconduct, current and future tenants at residential properties owned and operated by Defendants are likely to suffer irreparable injury in the loss of their legal rights. Injunctive relief is expressly authorized by L.A.M.C. § 45.35(D).

///

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

**F.   Breach of Covenant of Quiet Enjoyment**

**Plaintiff Salem v. All Defendants**

99.   Plaintiffs herein reallege and incorporates by reference all the preceding paragraphs of this Complaint.

100.   Defendants, and each of them, injured Ms. Salem in violation of Cal. Civ. Code § 1927 by committing one or more of the following unlawful practices:

a.   Breach of the covenant of quiet enjoyment; and,

b.   Invasion of the private right of occupancy.

**G.   Immigration Status Discrimination**

**All Plaintiffs v. All Defendants**

101.   Plaintiffs herein realleges and incorporates by reference all the preceding paragraphs of this Complaint.

102.   California state law protects persons based on their immigration status and persons "associated with a person who has…a particular immigration or citizenship status." Cal. Civ. Code § 1940.05.

103.   Defendants, and each of them, injured Plaintiffs in violation of Cal. Civ. Code § 1940.3 by discriminating against Mr. Massoud based on his immigration and citizenship status.

**H.   Negligence**

**All Plaintiffs v. All Defendants**

104.   Plaintiffs herein realleges and incorporates by reference all the preceding paragraphs of this Complaint.

105.   Defendants, and each of them, injured each individual Plaintiff in violation of Cal. Civ. Code § 1714 by committing one or more of the following negligent acts:

a. Failing to exercise ordinary care in hiring, training, or supervising employees or agents under Defendants' control; and,

b. Failing to exercise ordinary care in operating, managing, or maintaining

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

dwellings for rent to member of the public.

106. Accordingly, Plaintiffs are entitled to relief according to proof pursuant to Cal. Civ. Code §§ 3281 and 3333.

## V.    RELIEF

Wherefore, Plaintiffs pray for the following relief from the Court:

1. For an order that preliminarily and permanently enjoins each unlawful practice alleged in this Complaint barring Defendants, including their partners, agents, employees, assignees, and all persons acting in concert or participating with them, from committing the unlawful practices alleged herein;

2. For declarations that Defendants have violated the provisions of applicable fair housing laws;

3. For compensatory damages, according to proof;

4. For statutory damages and special damages, according to proof;

5. For restitution according to proof;

6. For punitive or exemplary damages, according to proof;

7. For reasonable attorneys' fees and costs of the suit;

8. For such other and further relief as the Court may deem proper.

Dated: July 15, 2025                    Respectfully Submitted,

                                        HOUSING RIGHTS CENTER


                                        _____
                                        RODNEY J. LEGGETT
                                        ZACHARY FREDERICK

-25-

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF